<u>**NOT FOR PUBLICATION**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JAMES WRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CAMDEN, *et al.*,<br><br>Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 21-13158-KMW-SAK<br><br>**OPINION** |

APPEARANCES:

RANDY P. CATALANO, ESQ.
401 KINGS HIGHWAY SOUTH, SUITE 4A
CHERRY HILL, NJ 08034

  *Counsel for Plaintiff James Wright*

ANDREW S. BROWN, ESQ.
WILLIAM F. COOK, ESQ.
WILLIAM M. TAMBUSSI, ESQ.
BROWN & CONNERY, LLP
360 HADDON AVENUE, PO BOX 539
WESTMONT, NJ 08108

  *Counsel for Defendant County of Camden, Officer Luis Gonzalez, and Officer Benjamin Quinones*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

Plaintiff James Wright ("Plaintiff") brings this action against Defendants County of

Camden, Officer Luis Gonzalez, and Officer Benjamin Quinones (collectively, "Defendants"),

alleging that they violated Plaintiff's rights under the Fourth and Fourteenth Amendment, pursuant

to 42 U.S.C. § 1983, the New Jersey Constitution, and the New Jersey Civil Rights Act ("NJCRA")

by arresting Plaintiff on July 1, 2019, based on a 911 call from Juvya Pickett alleging that the two

were involved in a domestic dispute.

Presently before the Court are Defendants' Motion for Summary Judgment (ECF No. 63),

Plaintiff's opposition, (ECF Nos. 67), and Defendants' reply. (ECF Nos. 68). For the reasons that

follow, Defendants' Motion for Summary Judgment is **GRANTED.**[1]

## II.    UNDISPUTED FACTS[2]

Plaintiff and Juvya Pickett were involved in an off-and-on intimate relationship for several

years, and on the night of June 30, 2019, while Ms. Pickett was staying at Plaintiff's residence,

Plaintiff ended their relationship. *See* Def.'s Statement of Material Facts ("DSMF") ¶¶1, 4-8, 10.

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

[2] The Court notes that Plaintiff's Reply to Defendant's Material Statement of Facts ("PRDMSF") and Plaintiff's Counterstatement of Material Facts ("PCMF") do not follow Federal Rule of Civil Procedure 56 or Local Civil Rule 56.1. because in his statements he does not cite to particular parts of materials in the record, nor do the statements show the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Local Civil Rule 56.1 instructs in pertinent part: The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion. In addition, the opponent may also furnish a supplemental statement of disputed material facts, in separately numbered paragraphs citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition. In his PCMF, Plaintiff does not cite to any record evidence whatsoever and thus the Court does not give it any weight. Thus, all of Plaintiff's statements that are unsupported by citation to the record are deemed admitted for the purposes of this motion. *See* L. Civ. R. 56.1. Moreover, the Court disregards any legal argument contained in these statements, because Local Rule 56.1 prohibits the inclusion of legal argument or conclusions of law. *Id.*

On July 1, 2019, at around 11:14 p.m. Ms. Pickett, called 911 from outside of Plaintiff's residence and told the operator that Plaintiff had grabbed her by the neck, threw her out of the apartment, and threatened to get his gun. *Id.* ¶14 Ms. Pickett told the operator that Plaintiff was a convicted felon and was not allowed to have a gun. *Id.* ¶15. Ms. Pickett also told the operator that during this confrontation, Plaintiff said to her "Don't, make me go get my gun". *Id.* ¶ 23. In response to the 911 call Camden County Police officers, including Defendants, were dispatched to Plaintiff's apartment. *Id.* ¶27. The officers were told that they were responding to a high priority, high risk situation described as a "Domestic involving two adults with injury or offender present." *Id.* ¶¶28-29. After arriving at the scene, Ms. Pickett told both Defendant officers that "Plaintiff grabbed her by the neck and threatened to get a gun" *Id.* ¶36. Ms. Pickett also told the Defendants that Plaintiff caused a scratch on her elbow and showed the officers a picture of Plaintiff's gun. *Id.* ¶¶37-38. Ms. Pickett also indicated that she was having difficulty breathing. *Id.* ¶40. After speaking with Ms. Pickett, the Defendants spoke with Plaintiff and obtained his consent to search his apartment and his vehicle. *Id.* ¶57. The officers did not locate a gun; however, they did identify a hedge shear that was depicted in the photograph containing the alleged weapon. *Id.* ¶¶55, 67. Defendants then contacted Detective Lewis who advised them to bring Ms. Pickett and Plaintiff to the Detective Bureau to be interviewed. *Id.* ¶¶55, 70. Although Plaintiff admitted that he and Ms. Pickett were involved in an intimate relationship, he maintained during his interview, as he did throughout the course of the evening, that he and Ms. Pickett were not involved in any dispute, that she was fabricating the events, and that he did not own or possess a gun. *Id.* ¶¶5-13, 78. After interviewing Ms. Pickett and Plaintiff, Detective Lewis decided that there was probable cause to charge Plaintiff with Aggravated Assault, Unlawful Possession of a Weapon, and Certain Person Not to Have Weapons. *Id.* ¶¶83, 85. Detective Lewis prepared the Affidavit of Probable Cause and Officer

3

Quinones signed it. *Id.* ¶85. Pursuant to the Affidavit of Probable Cause, Judge Garnes issued a Complaint/Warrant against Plaintiff. *Id.* ¶87. After being charged, Plaintiff was incarcerated for seven days in Camden County Jail before being released. *See* Pl.'s Compl. ¶20.

On August 21, 2019, at a hearing in the Camden County Municipal Court, the matter was dismissed without prejudice. *See* DSMF ¶¶97-102. On June 30, 2021, Plaintiff filed the instant action alleging violations of his Fourth and Fourteenth Amendment rights to liberty and due process, to be free from unlawful arrest, false imprisonment, malicious prosecution, and conspiracy to deprive Plaintiff of his rights. *See* Pl.'s Compl. ¶¶1-2, 26-28. Plaintiff also asserts NJCRA claims. *Id.* ¶29-33.

Plaintiff disputes that there was a domestic dispute between he and Ms. Pickett on July 1, 2019 and denies owning or possessing a firearm. *Compare* DMSF ¶1 *and* PRDMSF ¶1. Essentially, Plaintiff simply asserts that Ms. Pickett fabricated the domestic dispute in retaliation for his having ended their relationship on the morning of July 1, 2019. PCMF ¶¶1-2, 5, 9.

## III.   LEGAL STANDARDS

### Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a]

dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a genuine issue for trial.''" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.  DISCUSSION

### A. PROBABLE CAUSE

As noted above, the only facts Plaintiff disputes relate to whether or not there was a domestic dispute between himself and Ms. Pickett on July 1, 2019, and whether or not he actually owned or possessed a firearm. However, these factual disputes are immaterial as a matter of law because they have no bearing on whether or not the Defendants had probable cause to arrest him. As will be discussed in detail below, the existence of probable cause to arrest Plaintiff is fatal to his claims of false arrest and false imprisonment rendering his Section 1983 claims unsustainable.

To this end, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, which in pertinent part provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Therefore, to withstand summary judgment, Plaintiff must demonstrate an underlying constitutional violation because 42 U.S.C. § 1983 is not an independent source of substantive rights, but rather provides a cause of action for individuals to seek remedy for the deprivation of rights established elsewhere in the Constitution or federal laws. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). In other words, for Plaintiff to succeed on his various claims under § 1983, he "[1] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] [2] that the alleged deprivation was committed by a person acting under color of state law." *Mosca v. Cole*, 217 F. App'x 158, 163 (3d Cir. 2007) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Here, it is not disputed that Defendants were acting under the color of state law when they responded to Ms. Pickett's 911 call. Therefore, the Court will focus its analysis on Plaintiff's claims that Defendants violated his constitutional rights by virtue of his arrest and detention. It is elementary that probable cause is a necessary element of claims of false arrest and false imprisonment. *Caronte v. Chiumento*, No. 15-1828, 2018 WL 1135331 at *3 (D.N.J. Mar. 2, 2018) (citing *Berry v. Kabacinski*, 704 F. App'x 71, 73 (3d Cir. 2017)). Simply stated, "the presence of probable cause would defeat these [. . .] claims." *Castillo-Perez v. City of Elizabeth*, No. 2:11-

6958, 2014 WL 1614845 at * 10 (D.N.J. Apr. 21, 2014) (citing *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 137 n.16 (3d Cir. 2010)).

To prevail on his claim of false arrest, Plaintiff must demonstrate that there (1) was an arrest and (2) the arrest was made without probable cause. *Gould v. O'Neal*, No. 17-100, 2022 WL 354663 at *5 (D.N.J. Feb. 7, 2022). Here, Plaintiff argues that Defendants should not have arrested him because Ms. Pickett fabricated the altercation and that her story was so clearly inconsistent and contradictory so as to negate the existence of probable cause. Pl's Opp. at 2. However, the proper inquiry for probable cause is "only whether a factfinder could reasonably decide that [an officer's] determination was unreasonable given the evidence before them." *Alexander v. Borough of Pine Hill*, No. 17-6418, 2020 WL 6779148 at *8 (D.N.J. Nov. 18, 2020). Indeed, probable cause exists when, at the time a suspect is arrested, there are "facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information [] sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id.* (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005)). To determine if probable cause existed, the Court is to review the facts available to the officers at the moment of arrest based on the perception of an objectively reasonable police officer, incorporating the totality of the circumstances of the events leading up to arrest. *Lucia v. Carroll*, No. 12-3787, 2014 WL 1767527 at *3 (D.N.J. May 2, 2014) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 96 (1964)); *Gould*, 2022 WL 354663 at *6. The role of the Court is to review the record to ensure that the proper procedure for determining probable cause was followed and if not, whether probable cause existed despite the failure to follow proper procedure. *Id.* at 470. Usually, the question of probable cause in relation to a § 1983 claim is one for the jury, "[h]owever, a district court may conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff,

reasonably would not support a contrary factual finding." *Lucia*, 2014 WL 1767527 at *3 (quoting *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 789 (3d Cir. 2000)).

A critical aspect of this case is the applicability of the New Jersey Domestic Violence Act, ("NJDVA"), which provides that an officer "shall arrest the person who is alleged to be the person who subjected the victim [of] domestic violence and shall sign a criminal complaint," where "[a] victim exhibits signs of injury caused by an act of domestic violence." *See* N.J.S.A. § 2C:25-21(a), (a)(1). Indeed, "[a] police officer *must* arrest and take into custody a domestic violence suspect" if there is probable cause to believe an act of domestic violence has occurred and where there is "*any* indication that a victim has suffered bodily injury." *Signorile v. City of Perth Amboy*, 523 F. Supp. 2d 428, 433 (D.N.J. 2007) (emphasis added). Bodily injury can include physical pain or "impairment of physical condition," and probable cause can also be established when a police officer observes "manifestations of an internal injury[.]" *Id.*

Here, the resolution of this case is driven by what the Court finds to be the mandates of NJDVA and the expressed intent of the Legislature to "cure the reluctance on the part of police to arrest alleged perpetrators of domestic violence," and to encourage increased protection of domestic violence victims. *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 388 (N.J. 2000); *see also Signorile*, 523 F. Supp. 2d at 433. While of course the elements of probable cause must be present, the NJDVA appears to relax the indicia of probable cause to address the problem of the reluctant victim. *Id.* at 392-94 (finding that the failure of a victim and the alleged perpetrator to corroborate the allegations did not create a material issue of fact defeating probable cause, in part due to the fact that victims of domestic violence often do not report their abuse to law enforcement). The Third Circuit has held that "statements of a victim witness are typically sufficient to establish probable cause in the absence of '[i]ndependent exculpatory evidence or

*substantial* evidence of [a] witness's own unreliability' that 'outweigh[s]' the probable cause that otherwise exists." *Alexander*, 2020 WL 6779148 at *7 (quoting *Jecrois v. Sojak*, 736 Fed. Appx. 343, 347 (3d Cir. 2018)) (emphasis added).

While certainly officers responding to domestic disputes must exercise their judgment and most certainly cannot rely on obviously manufactured claims of abuse to blindly trample on the rights of an accused person, this Court finds no such danger here. In this case, the information provided to the Defendants from Ms. Pickett is undisputed and there is no record evidence demonstrating that the Defendants failed to follow established procedures or failed to consider Plaintiff's own uncorroborated version of events.[3] To this end, Plaintiff's utter failure to point this Court to *any* facts or evidence that would contradict the existence of probable cause coupled with Plaintiff's arguments, which are laced with unsupported speculation, fall far short of satisfying Plaintiff's burden to point the court to evidence that would negate the existence of probable cause in this instance.

To the contrary, Plaintiff admits that Ms. Pickett reported that during the 911 call, she asserted that Plaintiff had grabbed her by the neck, threw her out of the apartment, and threatened to get his gun, DSMF ¶¶21-23; PRDMSF ¶¶21-23; that Ms. Pickett relayed information to Defendant officers of being grabbed by her neck, thrown out of the apartment, and Plaintiff's statement regarding the alleged weapon and a photo of the same when they arrived on scene, and further pointed to a scrape on her elbow, and stated it came from her being thrown from the

---

[3] While Plaintiff failed to point to any record evidence, the Court's independent review of the record shows that Defendant Officers, as well as Detective Lewis, listened to Plaintiff's version of events of that night and Plaintiff's previous interactions with Ms. Pickett, and that Defendant Quinones listened to and reported to Defendant Gonzalez and Detective Lewis the information provided by neighbors at the scene, which suggested that Ms. Pickett instigated other domestic incidents with Plaintiff prior to July 1, 2019. *See* DSMF ¶2 at Ex. D-5 at 35:00-42:00; 46:00-50:36; 1:17-1:30; Ex. D-11 4:45-6:45; 9:30-10:00; 25:30-40. However, these points are insufficient, even when viewed in the light most favorable to Plaintiff, to demonstrate that a factfinder could decide that it was *objectively unreasonable* for the officers to believe that he assaulted Ms. Pickett.

apartment. DSMF ¶¶36-37; PRDSMF ¶¶ 36-38. These factual averments were made to Defendant officers at the time of arrest, which was sufficient to form probable cause and due to the NJDVA, Defendant officers did not have discretion and had to make an arrest. *See Alexander*, 2020 WL 6779148 at *8; *see also Signorile*, (holding that "there is no dispute of material fact that the arresting officers had probable cause . . . based on the exhibition of a physical injury to [the victim's eye] and her initial statements to the officers").[4]

Plaintiff's reliance solely on his unsupported theory that Ms. Pickett provided a false narrative and that the Defendant Officers should have done more to investigate her claims falls short because a finding of probable cause does not require the officers to adjudicate the merits of the dispute on scene. *See Lucia*, 2014 WL 1767527 at *3 ("The proper inquiry in analyzing a § 1983 claim based on false arrest is not whether the person arrested in fact committed the offense[.]"). Plaintiff does not point to any exculpatory evidence, nor does Plaintiff's unsubstantiated argumentation that Ms. Pickett lied amount to *substantial* evidence of unreliability to undermine Defendant officers' probable cause determination. In other words, without more, Plaintiff's efforts to address Ms. Pickett's credibility as the basis for a dispute of material fact misses the mark with respect to his burden to point to material facts in dispute related to the Defendants probable cause to arrest him.

As discussed fully above, the uncontested facts of the case clearly demonstrate that the Defendant officers had probable cause to arrest Plaintiff in light of the totality of the circumstances on July 11, 2019. Indeed, probable cause does not require all facts to point in one direction: "the probable cause standard by definition allows for the existence of conflicting, even irreconcilable

---

[4] In addition, Detective Lewis, who also interviewed both Plaintiff and Ms. Pickett at the Investigations Bureau after the arrest found Ms. Pickett's testimony typical of someone who had experienced a "traumatic event," and "had no reason to disbelieve her." DSMF ¶¶78-80. This detective also found probable cause after accepting Plaintiff's statement. DSMF ¶78-79, 83; PRDSMF ¶¶78-79, 83.

evidence." *Collick v. William Paterson Univ.*, No. 16-00471, 2021 WL 2374388 at *9 (D.N.J. Jun. 10, 2021). Ultimately, Plaintiff's central complaint is that the officers believed Ms. Pickett's false narrative that day, but "[t]he probable cause inquiry looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright*, 409 F.3d at 603. "The question before the Court today is not whether the officers were in fact correct in their determination; it is only whether a factfinder could reasonably decide that their determination was unreasonable given the evidence before them." *Alexander*, 2020 WL 6779148 at *8. The Court believes that Defendant officers' determination was reasonable given the evidence before them at the time. Thus, probable cause existed, and because there is no record evidence to place before a jury that would even tend to negate the existence of probable cause the Court finds that Plaintiff's claims cannot withstand summary judgment.

## B. QUALIFIED IMMUNITY

While the Court believes that Defendants had probable cause in this case, it is important to note that under § 1983, even if probable cause did not exist, the Court finds that Defendants are entitled to qualified immunity. *Lucia*, 2014 WL 1767527 at *4 (D.N.J. May 2, 2014) (quoting *Wildoner*, 162 N.J. at 385). Because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [the Supreme Court has] indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Government officials performing discretionary functions are generally shielded from liability for civil damages when their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known at the time. *See*

11

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Moreover, the NJDVA provides for immunity to preclude civil liability when: "A law enforcement officer . . . who, in good faith, reports a **possible** incident of domestic violence to the police shall not be held liable in any civil action brought by any party for an arrest based on probable cause..." N.J.S.A. § 2C:25-22 (emphasis added).

As discussed at length above, it is clear that Defendant officers reasonably believed that probable cause existed to arrest Plaintiff pursuant to the NJDVA. The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law," neither of which the Court finds here. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Even if Ms. Pickett's recounting of the events was false, even if Plaintiff never possessed a weapon as he alleges, what matters for the Court is that Defendant Officers followed the procedures required and reasonably came to the conclusion that probable cause existed for the arrest of Plaintiff on that night in July. Thus, because the undisputed record evidence establishes that the Defendants had probable cause to arrest Plaintiff it necessarily follows that they are immune from suit because they sought to enforce the NJDVA. *Signorile*, 523 F. Supp. 2d at 434 (citing N.J.S.A. § 2C:25-22).

### C. REMAINING CLAIMS

The remaining claims at issue in the instant motion are Plaintiff's allegations that Defendant officers engaged in conspiracy to deprive him of his rights, that Defendant officers violated Plaintiff's substantive due process rights, and also alleges a malicious prosecution claim. *See* Def.'s S.J. Br. at 6, 19, 21, 22. Plaintiff also alleges municipal liability for Camden County, arguing that the county "is a governmental entity . . . which manages, controls, and/or is responsible for the actions of the Camden County Police Department and/or its employees." Def.'s S.J. Br. at 23-24. The Court will not substantively address Plaintiff's remaining claims of malicious

12

prosecution, violation of due process, civil conspiracy, municipal liability, and attendant New

Jersey Civil Rights Act ("NJCRA") claims because Plaintiff abandoned those claims when he

failed to assert any argument in opposition to Defendants' summary judgment motion. *See*

*Freeman v. Middle Twp. Bd. of Educ.*, No. 10-6024, 2012 WL 3715925 at *3 n.5 (D.N.J. Aug. 27,

2012) (collecting cases); *see also* Pl.'s Opp. Br. *passim*.

In any event, Plaintiff's abandoned claims would fail regardless due to the lack of a

constitutional violation as discussed above. *See Strategic Envtl. Partners, LLC v. Bucco*, 184 F.

Supp. 3d 108, 132 (D.N.J. 2016) (dismissing § 1983 conspiracy claims because plaintiff failed to

establish any underlying violations of their constitutional rights); *Mulholland v. Gov't Cnty. Of*

*Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no

[constitutional] violation in the first place, there can be no derivative municipal claim.").

Regarding Plaintiff's malicious prosecution claim, it would also fail because probable cause

existed to arrest and detain Plaintiff. *See Fahnbulleh v. Steneck*, No. 15-5075, 2018 WL 1610692

at *4 (D.N.J. Apr. 3, 2018) (citing *Anderson v. Perez*, 677 F. App'x 49, 51-52 (3d Cir. 2017))

("False arrest, malicious prosecution, and false imprisonment all require a plaintiff to show the

underlying arrest was not supported by probable cause in order to survive summary judgment.").

Further, "[w]here a particular Amendment provides an explicit textual source of

constitutional protection against a particular sort of government behavior, that Amendment, not

the more generalized notion of substantive due process, must be the guide for analyzing these

claims[,]" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal citations and quotations omitted),

and thus Plaintiff's standalone substantive due process claim is more appropriately analyzed under

the Fourth Amendment alone. This analytical approach is supported by the nature and context of

his claims, which are more directly related to Plaintiff's Fourth Amendment right to be free of

illegal seizure (as well as in light of the Supreme Court's holding in *Albright v. Oliver* that malicious prosecution would also be more appropriately brought under the Fourth Amendment). *See Pagano v. Straccialini*, No. 07-1698, 2007 WL 4390018 at *2-3 (Dec. 12, 2007). Therefore, Plaintiff does not have a separate cause of action for a "general" violation of his right to due process outside of his claims alleging false arrest, false imprisonment, malicious prosecution, and conspiracy, all of which fail as a matter of law in this case.

To the extent that Plaintiff asserts NJCRA claims, the NJCRA was modeled after 42 U.S.C. § 1983 (creating a private cause of action for violations of civil rights under the New Jersey Constitution). *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). Courts in this District have "repeatedly construed the NJCRA in terms nearly identical to its federal counterpart," and therefore Plaintiff's NJCRA claims are sufficiently addressed through the lens of this Court's analysis of Plaintiff's false arrest and imprisonment under 42 U.S.C. § 1983. *See id.* And for the same reasons as discussed above, the NJCRA claims fail as a matter of law.

Finally, with regard to Plaintiff's claim against Camden County, municipal liability under Section 1983 requires that the municipality itself caused the underlying constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (stating where a municipality is charged with liability for a constitutional violation pursuant to Section 1983, liability can attach to the municipality "only where the municipality itself causes the constitutional violation"). It is not enough to identify conduct properly attributable to the municipality, a plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. *Belin v. O'Neill*, No. 17-13207, 2019 WL 6493942 at *3 (D.N.J. Dec. 3, 2019). In other words, liability pursuant to respondeat superior cannot apply to Camden County in the context of a §1983 claim. *See Hammon v. Kennett Twp.*, 746 F. App'x 146, 149 (3d Cir. 2018).

"Municipal liability for the acts of employees must be premised on [the *Monell* Doctrine]." *Abdallah v. City of Paterson*, No. 16-4660, 2017 U.S. Dist. LEXIS 82135 at *8-9 (D.N.J. May 26, 2017). Under the *Monell* Doctrine, "a local government unit is liable only to the extent that its own policies or practices led to a deprivation of constitutional rights," and thus Plaintiff would need to demonstrate that (1) a constitutional injury occurred and (2) the injury was caused by either a municipal policy or custom. *Id.* As discussed, Plaintiff does not present any evidence demonstrating that he suffered a Constitutional violation, nor does he point to any policy or custom of the municipality that created the "moving force" behind Defendant officers' actions. Therefore, Plaintiff's claims asserted against Camden County fail as a matter of law. *See Mulholland v. Gov't Cnty. Of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."). Therefore, summary judgment is entered here in favor of Camden County.

## V.    CONCLUSION[5]

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED**. An order consistent with this Opinion will be entered.

December 11, 2023

KAREN M. WILLIAMS, U.S.D.J.

---

[5] The Court notes that the record evidence presented in this matter demonstrates the difficulty that is present in many cases involving interpersonal disputes: only Plaintiff and Ms. Pickett know precisely what happened between them on the night of July 1, 2019, as there were no other witnesses present at the back entrance to Plaintiff's residence or any camera footage of what happened that night. As discussed at length, probable cause does not require the police, or does it require the Court upon review, to determine in fact what occurred. If Plaintiff believes that he was wrongfully accused of domestic violence, such a claim may be more appropriately addressed in state court.